Filed 8/8/14  In re D.G. CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re D.G. et al., Persons Coming Under the Juvenile Court Law. | B252579 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. CK67231) |
| Plaintiff and Respondent, | |
| v. | |
| S.L., | |
| Defendant and Appellant. | |

APPEAL from a judgment and orders of the Superior Court of Los Angeles County, Marilyn K. Martinez, Juvenile Court Referee.  Affirmed.

Roni Keller, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Sarah Vesecky, Deputy County Counsel, for Plaintiff and Respondent.

———————————————

S.L. (mother) appeals from the juvenile court's judgment of October 1, 2013, declaring D.G. and K.L. dependents of the court under Welfare and Institutions Code section 360.[1] She contends substantial evidence does not support the sustained allegation under section 300, subdivisions (b) and (j) that leaving D. home alone overnight without adult supervision created a substantial risk of serious harm to the children. She further contends the juvenile court abused its discretion when it declared the children dependents of the court and issued family law orders. Respondent, Department of Children and Family Services (Department), cross-appeals from the ruling of October 1, 2013 dismissing the allegation under section 300, subdivision (b) that mother abused alcohol, which endangered the children. We affirm.

## STATEMENT OF FACTS AND PROCEDURE

D. was born in 2000 to mother and P. G. K. was born in 2007 to mother and D. L. D. lived in mother's home, and K. lived primarily in his father's home. Mother had a history of abusing alcohol. She was convicted of driving under the influence in 2011 and ordered to participate in a treatment program, and there was a breathalyzer system in her car. She continued to drink.

D. had special needs which were difficult to handle. He was diagnosed with Attention Deficit Hyperactivity Disorder (ADHD) and was prescribed three medications. He was emotionally younger than his age and socially delayed. He was in special resource classes in school.

Mother worked 12-hour night shifts. She left D. home alone to take care of himself when she was at work. She did not prepare D. for what he should do and who he should contact in case of an emergency. Mother told maternal grandmother and D. to lie about D. being left home alone and to state that maternal grandmother took care of D. at night.

---

[1]    All further statutory references are to the Welfare and Institutions Code, unless otherwise indicated.

2

Mother would be asleep when it was time for D. get up and ready for school. She did not drive him; he had to get there by himself. As D. would stay up late at night, he was frequently too tired to go to school and he hid in the closet instead. D's teacher spoke to mother about D.'s poor grades and poor attendance. Mother stated she would consider driving D. to school two days a week and refused the resources the school offered her.

K. lived with mother on the days mother had off from work. During his stays with mother, he had very poor attendance at school.

The Department filed a section 300 petition on June 28, 2013. As mother agreed to a safety plan, the children were not detained from her custody. D. was ordered released to mother and K. was released to parents, with the father's home as K.'s primary residence.

K. liked living with his father. He did not have contact with mother. He did not want to live with D. K's father provided K. with a safe and nurturing environment.

Mother acknowledged she left D. alone at night but believed he was never at risk. She continued leaving him home alone at night. She stated she came home during her breaks to make sure he was in bed and took his medications and was home when he woke up in the morning. D. stated he knew to call 911 or family members or go to the neighbor in case of an emergency. He stated mother checked on him by telephone, except when his cell phone was not working.

On August 14, 2013, the court ordered D. released to his father, who lived in Arizona. Mother was in agreement with the order.

The adjudication hearing was held on October 1, 2013. The court declared the children dependents of the court based on sustained allegations under section 300, subdivision (b) and (j) that: mother left D. home alone overnight on numerous occasions in 2013, which placed him in an endangering situation and created a risk of danger and harm to the children. The court stated: "[D.] and mother both admit that [D.] is left alone while his mother goes to work. She says she's gone 12 hours. She's close so she could get home quickly. She comes on her hour break and attends to him. [¶] Eleven

3

hours he is left alone. This is a boy, a young boy – he's 13 – who has special needs. . . . He's in special education. He has a diagnosis of attention deficit hyperactive disorder. He takes psychotropic medications. He's described as being a special-needs child who is bullied at school. [¶] Generally, he's able to have phone communications with his mother except sometimes the phone wasn't working because it was wet. So he had no way to communicate with his mother. [¶] Should there be a fire or an earthquake, the 13-year-old child is not the one responsible to think quickly how to protect himself. That was his mother's responsibility, and she was irresponsible. She was working full time. There isn't any evidence that this is a case where mother was so indigent she couldn't find childcare. [¶] And the result: [D.] missed a lot of school, or [D.] was tardy to school. Mother made a statement to the social worker that she assumed [D.] was old enough to get himself up and get ready for school. Well, he wasn't, because he missed school or he was tardy to school. And at his age, that's his job to be a student and his mother did not assist him in that responsibility. [¶] [K.] is much younger. [K.] just turned six years old. And while he primarily lived with his father, he did spend time with his mother. And given her very poor judgment and being irresponsible toward the other brother, certainly poses the much younger brother at risk. [¶] And, therefore, the boys are described by (b) and (j) of [section] 300."

Concerning disposition of K.'s case, mother asked for joint legal and physical custody and residence with father. Concerning D., mother agreed to joint legal and physical custody, and primary residence with father.

The court terminated juvenile court jurisdiction with a family law order. The court ordered joint legal and physical custody of D. and primary residence to D.'s father. Mother's visitation was to be arranged by the parties. The court ordered joint legal custody of K. and K.'s father to have physical custody and be the primary residence. Mother was granted unmonitored visits with K. every other weekend, and the parents were permitted to modify the schedule by written agreement. Mother was ordered not to leave the children alone during visits.

4

1. *Mother's appeal*

a. *Substantial evidence supports the finding that leaving D. home alone overnight without adult supervision created a substantial risk of serious harm to the children.*

Mother contends the evidence is not sufficient to support jurisdiction under section 300, subdivisions (b) and (j) in that leaving D. home alone at night did not put the children at substantial risk of harm.[2] We disagree with the contention.

" 'In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings and disposition, we determine if substantial evidence, contradicted or uncontradicted, supports them. "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." (*In re Heather A.* (1996) 52 Cal.App.4th 183, 193.) "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court. [Citations.] ' "[T]he [appellate] court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence . . . such that a reasonable trier of fact could find [that the order is

---

[2] To the extent mother contends the allegations are insufficiently pled to support jurisdiction, the contention was forfeited by her failure to file a demurrer. The legal sufficiency of a petition cannot be challenged for the first time on appeal. (*E.g. In re Christopher C.* (2010) 182 Cal.App.4th 73, 82-83; contra, *In re Alysha S.* (1996) 51 Cal.App.4th 393, 397.) To test the legal sufficiency of a petition, a demurrer must be filed in the dependency court pursuant to the procedure set forth in Los Angeles County Superior Court Rules, rule 7.16(d). If a demurrer is not filed, any challenge on appeal to the legal sufficiency of the petition is forfeited. (*E.g., In re Christopher C., supra,* at p. 83.) In any event, any deficiency of the petition was rendered harmless by the fact that a jurisdictional hearing was held and substantial evidence supports the finding of jurisdiction.

appropriate].' ' [Citation.]" (*In re Matthew S.* (1988) 201 Cal.App.3d 315, 321.)' (*See In re Angelia P*. (1981) 28 Cal.3d 908, 924.)" (*In re I.J.* (2013) 56 Cal.4th 766, 773.) Thus, the pertinent inquiry is whether substantial evidence supports the finding, not whether a contrary finding might have been made. (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 228.)

Section 300, subdivision (b) describes a child who "has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child . . . ."

Section 300, subdivision (j) describes a child whose "sibling has been abused or neglected, as defined in subdivision (a), (b), (d), (e), or (i), and there is a substantial risk that the child will be abused or neglected, as defined in those subdivisions. The court shall consider the circumstances surrounding the abuse or neglect of the sibling, the age and gender of each child, the nature of the abuse or neglect of the sibling, the mental condition of the parent or guardian, and any other factors the court considers probative in determining whether there is a substantial risk to the child."

"While evidence of past conduct may be probative of current conditions, the question under section 300 is whether circumstances *at the time of the hearing* subject the minor to the defined risk of harm." (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 824.) "[S]ection 300 does not require that a child actually be abused or neglected before the juvenile court can assume jurisdiction. [Section 300, subdivisions (b) and (j)] require only a 'substantial risk' that the child will be abused or neglected. The legislatively declared purpose of [section 300] 'is to provide maximum safety and protection for children who are currently being physically, sexually, or emotionally abused, being neglected, or being exploited, and to ensure the safety, protection, and physical and emotional well-being of children *who are at risk of that harm*.' (§ 300.2, italics added.) 'The court need not wait until a child is seriously abused or injured to assume jurisdiction and take the steps necessary to protect the child.' [Citation.]" (*In re I.J., supra,* 56 Cal.4th at p. 773.)

6

"[T]he court may . . . consider past events when determining whether a child presently needs the juvenile court's protection. [Citations.] A parent's past conduct is a good predictor of future behavior. [Citation.] 'Facts supporting allegations that a child is one described by section 300 are cumulative.' [Citation.] Thus, the court 'must consider all the circumstances affecting the child, wherever they occur.' [Citation.]" (*In re T.V.* (2013) 217 Cal.App.4th 126, 133.)

Substantial evidence supports the finding. The record contains evidence of recurring neglect by mother by regularly leaving D. home alone while she worked her 12-hour night shift. She continued leaving him alone while she worked, after the Department became involved. She checked on him in person during her lunch hour, which meant he was unsupervised and had to take care of himself for 11 hours. When D.'s cell phone was not working, she could not check in on him by phone. D. was an emotionally young and socially delayed 13 year-old special needs child who was prescribed three psychiatric medications. Mother believed D. could take care of himself and keep himself safe during an emergency. However, he frequently stayed up all night and was not able to get himself to school on time or at all. Regularly leaving an immature, special needs child alone all night creates a substantial risk that an emergency, accident, or illness will not be appropriately responded to, resulting in serious harm to the child. Mother did not believe her supervision of D. was negligent or placed him at risk. K.'s many absences from school when he stayed overnight with mother indicates her supervision of the much younger K. was inadequate, as well. Mother's failure to properly supervise D. and K., and denial of her role, placed both children at risk of negligent supervision and consequent harm. The fact the children lived with their fathers at the time of the hearing did not eliminate the risk. Without the court taking jurisdiction and issuing custody and visitation orders, the children could return to mother's care and risk being negligently supervised. The foregoing is substantial evidence supporting jurisdiction under section 300, subdivisions (b) and (j).

Mother reargues the evidence and asks us to reweigh it. This we will not do. Our role is to determine whether substantial evidence supports the finding. In this case, ample substantial evidence supports the finding.

b. *Abuse of discretion.*

Mother contends it was an abuse of discretion to declare the children dependents of the court and issue family law orders.[3] We disagree with the contention.

Section 360 provides: "After receiving and considering the evidence on the proper disposition of the case, the juvenile court may enter judgment as follows: [¶] . . . [¶] (d) If the court finds that the child is a person described by Section 300, it may order and adjudge the child to be a dependent child of the court."

When the court terminates its jurisdiction over a child who was adjudged a dependent child of the court, it may "issue . . . an order determining the custody of, or visitation with, the child [for filing in family law court]. [¶] Any order issued pursuant to this section shall continue until modified or terminated by a subsequent order of the superior court." (§ 362.4; see *In re Chantal S.* (1996) 13 Cal.4th 196, 203.)

" 'The juvenile court has broad discretion to determine what would best serve and protect the child's interest and to fashion a dispositional order in accordance with this discretion. [Citations.] The court's determination in this regard will not be reversed absent a clear abuse of discretion.' [Citation.]" (*In re Corrine W.* (2009) 45 Cal.4th 522, 532.)

---

[3]    Respondent contends we have no jurisdiction to review the dispositional orders concerning D. because mother failed to appeal from them. We disagree. While the notice of appeal states mother appealed the order removing K. from her custody, it also states the notice of appeal pertained to both children and the order appealed from included the declaration of dependency and removal orders. Construing the notice of appeal liberally in favor of its sufficiency, as we must, we conclude mother has appealed from the dispositional orders concerning D. (Cal. Rules of Court, rule 8.100(a)(2).)

Having found the children were described by section 300, subdivision (b), the court had discretion under section 360, subdivision (d) to declare them dependents of the court. The evidence of mother's negligent supervision, which placed the children at risk of harm, and denial of her role, and the fact that, without court orders, the children could return to her care, supports the judgment declaring the children dependents of the court.

Having declared the children dependents of the court, the court had discretion under section 362.4 to issue a family law order determining custody and visitation when it terminated jurisdiction. As the juvenile court knew this family and its child protection issues, the court was well suited to issue custody orders. Without the custody and visitation orders that the court issued, the children could return to mother's negligent supervision.

Concerning mother's challenge to the dispositional orders for D., mother agreed to the custody order that the juvenile court made. As she acquiesced in the order, her contention on appeal that the order for D. was an abuse of discretion has been forfeited. (*Zinke v. Zinke Rebottoming Shoe Co., Inc.* (1962) 208 Cal.App.2d 690, 694-695 [" ' "It is an elementary and fundamental rule of appellate procedure that a judgment or order will not be disturbed on an appeal prosecuted by a party who consented to it.". . .' "].)

The order giving sole physical custody of K. to K.'s father was not an abuse of discretion. K. had been living in his father's home, which provided him with a safe and nurturing environment. He liked living there. When he stayed with mother, he missed school and was at risk of being left without adult supervision. Mother agreed that father's home should be K.'s primary residence. The court granted her unmonitored visits every other weekend, with the possibility of modifying the schedule with father's agreement. The foregoing is substantial evidence supporting the court's exercise of discretion. Moreover, mother does not state how, with joint legal custody, liberal visitation, and her agreement that the father would be the primary residence, she would be better off with a joint physical custody order.

9

We conclude the court did not abuse its discretion in adjudging the children dependents of the court, issuing family law orders, and granting K.'s father sole physical custody.

2. *Respondent's cross-appeal*

*Substantial evidence supports the ruling dismissing the allegation under section 300, subdivision (b) that mother abused alcohol, which endangered the children.*

At the hearing on the petition, the court dismissed the allegation in count b-2, under section 300, subdivision (b), that mother abused alcohol, which rendered her unable to provide regular care and supervision of the children, and, on June 24, 2013 and prior occasions, mother was under the influence of alcohol while the children were in her care. The court stated: "The reason I'm not sustaining the alcohol [allegation] is it's clear to the court that [mother] has a history of alcohol abuse; otherwise she would not have been ordered by the criminal court to participate in a program. The fact that she . . . has a breathalyzer on her car also comes from a criminal court order. [¶] She continues to drink alcohol, and that's probably extremely poor judgment. There isn't any evidence that she is driving under the influence. [¶] It's hard to tell and I can't find by the preponderance that her consumption of alcohol is posing a risk to her children. It's her poor judgment in leaving [D.] alone that's causing harm to [D.] and risk to [K.]"

There was evidence that the home mother maintained was neat and orderly, with plenty of food and appropriate sleeping arrangements. The social worker reported D. appeared to be well-cared for and happy. There was evidence mother took D. to the doctor and dentist, obtained special educational services, advocated on his behalf at school when he was being bullied, and obtained services for him at a center for children and families. Mother testified she monitored D.'s compliance with the psychiatric medications he was prescribed. D. stated mother's drinking did not affect how mother treated him. The children stated they were happy and had no concerns. K.'s father knew mother drank but never was told or observed that she put the children in danger due to drinking. He always knew her to be an excellent mother. D.'s father believed mother's drinking did not affect her as a mother. The children denied seeing mother under the

10

influence. Mother acknowledged she drank when she was not working and denied it caused any limitations to her parenting. Mother stated she previously had a problem with alcohol but no longer drank as much as she used to, and she lost 40 pounds from limiting her drinking and working out. There was evidence mother's car was equipped with a breathalyzer and mother had a valid driver's license. Mother testified she never drove the children after consuming alcohol. There was no evidence she currently drove while under the influence. On one occasion, the social worker went to the home and found mother drinking a beer. The worker did not indicate mother was inappropriate or appeared to be under the influence.

In the morning of June 25, 2013, mother declined to take an alcohol/drug test, stating she was drinking the night before. She stated she drank more than a small amount of alcohol. She stated she did not want to be tested because, if she tested once, it would lead to the Department testing her several times. At the hearing, the Department pointed to this evidence when the court asked what evidence supported the allegation mother was under the influence on June 24 and prior occasions when the children were in her care.

The court found the allegation in count b-2 was not proved. The court's determination is supported by substantial evidence. When the social worker observed mother drinking beer in the home, mother did not appear to be under the influence or act inappropriately. Mother, D., D.'s father, and K.'s father all stated mother's consumption of alcohol did not affect her parenting. The children stated they had never seen mother under the influence. Mother stated she limited her consumption of alcohol. The foregoing evidence, plus the evidence mother maintained an appropriate home for the children, took proper care of D.'s educational, medical, dental, social, and psychiatric needs, and did not drive after consuming alcohol is substantial evidence supporting the dismissal of count b-2. As substantial evidence supports the court's determination, we accept it. (*People v. Weatherton* (2014) 59 Cal.4th 589, 598 [" 'We accept the trial court's factual findings and credibility determinations if supported by substantial evidence.' [Citation.]"].)

11

## DISPOSITION

The judgment and orders are affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


KLEIN, P. J.


We concur:


CROSKEY, J.


KITCHING, J.